1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

### EASTERN DISTRICT OF CALIFORNIA

9

10

ANGELINA MORA,

11
                Plaintiff,

12
    v.

13
NANCY A. BERRYHILL,

14
Acting Commissioner of Social Security,[1]

15
                Defendant.

Case No. 1:16-cv-01279-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

16

17

18
_____/

19

### I.     INTRODUCTION

20

21
      On August 29, 2016, Plaintiff Angelina Mora ("Plaintiff") filed a complaint under 42

22
U.S.C. §§405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of

23
Social Security (the "Commissioner" or "Defendant") denying her applications for

24
Supplemental Security Income ("SSI") payments and Disability Insurance Benefits ("DIB").

25
(Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted,

26

27
[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration.
*See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017).  She is therefore

28
substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20
C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper
defendant").

without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.    BACKGROUND

Plaintiff was born on April 23, 1972 (Administrative Record ("AR") 214), and she completed six years of formal education prior to emigrating from Mexico to the United States (AR 278, 502, 751). She previously worked as an almond packer, a fruit packer, a baker, a fast-food worker, and a laborer. (AR 35, 278, 300-02, 458-59.)

On November 28, 2012, Plaintiff protectively filed the instant application for DIB and SSI payments, alleging that she became disabled on November 3, 2011, due to chronic pain, tendonitis, carpal tunnel syndrome, shoulder strain, neck and wrist sprain and strain, and lumbar and thoracic spine sprain and strain. (AR 214, 277; *see also* AR 64.)

**A.    Relevant Medical Evidence[3]**

**1.    Ana Nogales, Ph.D.**

On August 11, 2012, Plaintiff underwent a psychological evaluation, performed by Ana Nogales, Ph.D., ABPS, FACFE, as part of a worker's compensation claim filed by Plaintiff. (AR 501.) Plaintiff reported difficulty concentrating due to the above-referenced physical pain and symptoms, forgetfulness, nervousness, anxiousness, depression, sadness, lack of motivation, hopelessness, and suicidal thoughts. (AR 505.) Dr. Nogales noted Plaintiff's moderate psychomotor retardation, depressed mood, impaired cognitive functioning, and difficulty coping. (AR 508.) Dr. Nogales also noted that Plaintiff was monolingual, speaking only in Spanish. (AR 507.) The psychometric test results indicated the presence of moderate anxiety and moderate depression, evidence of a true depressive disorder, difficulty concentrating, and sleep disorder. (AR 512-13.)

Dr. Nogales diagnosed Plaintiff with major depression, single episode, moderate. (AR 513.) Dr. Nogales recommended individual psychotherapy sessions with a cognitive and behavioral approach to help reduce Plaintiff's depression and insomnia, and to help Plaintiff

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 9.)
[3] As Plaintiff's assertions of error are limited to (1) the alleged conflict between Plaintiff's mental and language limitations and the jobs identified by the Vocational Expert and (2) the Administrative Law Judge's discrediting of Dr. Rita Hyman's medical opinion, only evidence relevant to those arguments is set forth below.

develop coping skills.  (AR 516.)  Plaintiff's prognosis was considered to be fair.  (*Id*.)  Dr. Nogales concluded that Plaintiff was "unable to work under her present emotional condition." (*Id*.)

### 2.  John K. Zhang, Psy.D.

On April, 23, 2013, Plaintiff underwent a consultative psychological evaluation performed by John K. Zhang, Psy.D.  (AR 589.)  Dr. Zhang noted that Plaintiff did not speak English, and an interpreter was present.  (*Id*.)  Dr. Zhang observed that Plaintiff displayed no signs of psychomotor agitation or retardation.  (AR 591.)  Plaintiff's memory and concentration were mildly impaired, and she tested below average in the areas of intelligence, abstract thinking, and fund of general knowledge.  (*Id*.)  Dr. Zhang diagnosed Plaintiff with major depressive disorder, with mild psychosis.  (*Id*.)  Plaintiff's prognosis was considered to be fair.  (AR 592.)

### 3.  Ehab Yacoub, M.D.

On May 3, 2013, Plaintiff underwent a consultative psychological evaluation performed by Ehab Yacoub, M.D.  (AR 923.)  Plaintiff reported depressed mood, anxiety, crying spells, low energy, frequent states of apathy, marked irritability, and insomnia.  (*Id*.)  The mental status examination "revealed dysphoric mood/anxiety and manifest congruent affect to the relevant thought content of relating the history of the work-related injury."  (*Id*.)  Dr. Yacoub agreed with Dr. Nogales' diagnosis of major depression, single episode, moderate, and recommended that Plaintiff continue taking Zoloft.  (AR 924.)

### 4.  Rita Hyman, Ph.D. – Psychologist, Worker's Compensation Claim

On August 7, 2013, Plaintiff presented for a Panel Qualified Medical Evaluation in connection with her worker's compensation claim.  (AR 928.)  Plaintiff was evaluated by a psychologist, Rita Hyman, Ph.D., who interviewed Plaintiff and administered psychological testing over the course of four hours.  (*Id*.)  Both the interview and the testing were conducted in Spanish.  (*Id*.)  Plaintiff reported feeling depressed and anxious as a result of her physical pain. (AR 930.)  Plaintiff also reported feeling irritable and having suicidal thoughts.  (*Id*.)  Plaintiff further complained of pain and numbness in her legs and hands.  (AR 936.)  Dr. Hyman observed that Plaintiff's body movements and motions reflected her subjectively reported pain.  (AR 936.)

Plaintiff appeared sad, restless, weary, and agitated. (*Id.*) Plaintiff's speech was pressured in tone and, at times, it was excessive in content. (*Id.*)

Dr. Hyman found that the psychological test results revealed "a great deal of overall distress but must be considered with a measure of caution, as [Plaintiff] has a tendency to overstate her level of disturbance. Consequently, [Plaintiff's] test results are likely to over-represent the magnitude of her distress." (AR 944.) Dr. Hyman characterized Plaintiff's complaints as a "too-ready willingness to endorse a wide variety of complaints and discomforts." (AR 944.) Dr. Hyman further noted that Plaintiff's "symptom magnification may also represent a 'cry for help' from a psychologically unsophisticated woman wanting to impress upon this evaluator that she is feeling increasingly hopeless and desperate, lest the magnitude of her distress be overlooked or not fully appreciated." (AR 944-45.) Dr. Hyman diagnosed Plaintiff with (1) major depressive disorder, single episode, moderate, (2) anxiety disorder not otherwise specified, and (3) pain disorder associated with psychological factors and a general medical condition. (AR 959.)

Dr. Hyman concluded that Plaintiff's mental impairments would prevent her from working in any type of work setting except for a sheltered workshop setting, and she found that Plaintiff would be limited to working only a few hours a day, with a flexible work schedule, and in a stress-free setting. (AR 966.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for SSI and DIB initially on June 17, 2013, and again on reconsideration on November 7, 2013. (AR 100-114, 115-146.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 60-61.) At the hearing on December 8, 2014, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 28, 65-85.)

Plaintiff, who speaks Spanish, testified through an interpreter. (AR 64.) Plaintiff testified generally to her physical and mental impairments. (*See* AR 69-70, 73-74, 76-78.) With regard to her physical impairments, Plaintiff described suffering "tremendous pain from [her] neck all the way to [her] lower back . . . [which] radiates down [her] legs." (AR 70.) She

described experiencing numbness in her arms and hands, and an inability to grip with her hands. (*Id*.) Plaintiff further testified that she suffers from stomach gastritis. (AR 73.) With regard to her mental impairments, Plaintiff testified that she was not currently receiving psychiatric treatment, but that she remains in need of such treatment. (AR 76.) Plaintiff testified that she ceased receiving psychiatric treatment because her therapist failed to follow up regarding his authority to continue treating her. (AR 76-77.)

A Vocational Expert ("VE") testified at the hearing, as well. The VE testified that Plaintiff has past work as (1) an almond packer and a fruit packer, Dictionary of Operational Titles ("DOT") code 920.687-134, which was medium work, with a specific vocational preparation ("SVP") of 2, requiring level 2 reasoning skills; (2) a bakery worker, DOT code 920.587-018, which was medium work, with an SVP of 2, requiring level 2 reasoning skills; (3) a fast-food worker at McDonald's, DOT code 311.472-010, which was light work, with an SVP of 2, requiring level 2 reasoning skills; and (4) a laborer, stores at K-Mart, DOT code 922.687-058, which was medium work, with an SVP of 2, requiring level 2 reasoning skills. (AR 79.)

The ALJ asked the VE one hypothetical question, in which the VE was to consider a person who is limited to sitting for six hours in an eight-hour work day, standing and walking for two hours, lifting up to only ten pounds, using her upper extremities "frequent[ly] but not constant[ly]," and being unable to communicate in English. (AR 79.) The ALJ asked the VE whether such a person could, given those limitations, perform any of Plaintiff's past work. (*Id*.) The VE testified that such a hypothetical person could perform the following jobs: (1) patcher of electrical equipment, DOT code 723.687-010, SVP of 2, sedentary strength, level 1 language skills, for which there exists 500 jobs locally, 16,000 jobs statewide, and 206,000 nationally; (2) nut sorter, DOT code 521.687-086, SVP of 2, sedentary strength, level 1 language skills, for which there exists 650 jobs locally, 47,000 jobs statewide, and 471,000 jobs nationally; and (3) weight tester, DOT code 539.485-010, SVP of 2, sedentary strength, level 3 language skills, for which there exist 630 jobs locally, 47,000 jobs statewide, and 454,000 jobs nationally. (AR 79-80.)

Plaintiff's attorney then asked the VE the same hypothetical question considering the

same person as outlined in the ALJ's hypothetical, but with the limitation that such a person can use her upper extremities occasionally but not frequently, rather than frequently but not constantly. (AR 81.) The VE answered, "No, [those jobs] cannot be done with occasional hand use . . . because they do require frequent use of hands. The patcher, you're covering electrical outlets and wiring. The weight tester, you have to be able to manipulate gauges. And, of course, the nut sorter is done with just your hands." (AR 81-82.)

## C.     The ALJ's Decision

In a decision dated January 29, 2015, the ALJ found that Plaintiff was not disabled. (AR 28-41.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 30-41.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since November 3, 2011, the alleged disability onset date. (AR 30.) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, carpal tunnel syndrome, left shoulder abnormality, anxiety disorder, and depressive disorder. (*Id*.) The ALJ found that Plaintiff's abdominal impairment, however, was not a severe impairment. (AR 34.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 34-36.) The ALJ determined that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the following limitations: lift 10 pounds; sit for six hours in an eight hour day; stand and walk for two hours in an eight hour day; limited to simple repetitive tasks; who is unable to speak English; and who can use her upper extremities for frequent but not constant work activity.

(AR 36.)

In determining Plaintiff's RFC, the ALJ made findings as to Plaintiff's credibility and as to the weight to afford the various medical opinions. (*See generally* AR 36-39.) Of particular relevance to the instant matter, the ALJ afforded "little weight" to the opinion of Dr. Hyman, a clinical psychologist, finding the following: (1) Dr. Hyman evaluated Plaintiff only once; (2) Dr. Hyman's opinion as to Plaintiff's work limitations reflect Plaintiff's subjective complaints—

which the ALJ discredited; and (3) Dr. Hyman's opinion as to Plaintiff's work limitations conflicts with Dr. Hyman's statement that Plaintiff exaggerated her level of disturbance. (AR 38.)

The ALJ found that Plaintiff had no past relevant work. (AR 39.) The ALJ also found that Plaintiff could not communicate in English and that a person with such a limitation is considered the same as a person who is illiterate in English. (*Id*.) The ALJ determined, given Plaintiff's RFC, that Plaintiff was not disabled because she could perform a significant number of other jobs in the local and national economies, specifically patcher of electrical equipment, nut sorter, and weight tester. (AR 40.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 21, 2016. (AR 11-18.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**D.     Plaintiff's Appeal**

On August 29, 2016, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff argues that the ALJ erred in three respects: (1) the ALJ failed to specifically explain his reasons for finding that Plaintiff, who cannot communicate in English, could perform jobs identified by the VE, which under the DOT require language development levels 1 and 3; (2) the ALJ erred in finding that Plaintiff, who can perform only simple repetitive tasks, could perform the job of weight tester, which under the DOT requires level 3 reasoning; and (3) the ALJ failed to articulate sufficient reasons for discrediting the opinion evidence of Dr. Rita Hyman. (*See generally* Doc. 13 at 4, 9.)

**III.     SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.

*See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.     APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step,

the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

In her Opening Brief, Plaintiff contends that the ALJ erred in three respects: (1) the ALJ failed to specifically explain his reasons for finding that Plaintiff, who cannot communicate in English, could perform jobs identified by the VE, which under the DOT require language development levels 1 and 3; (2) the ALJ erred in finding that Plaintiff, who can perform only simple repetitive tasks, could perform the job of weight tester, which under the DOT requires level 3 reasoning; and (3) the ALJ failed to articulate sufficient reasons for discrediting the opinion evidence of Dr. Hyman. (*See generally* Doc. 13 at 4, 9.)

Defendant counters, as a threshold matter, that Plaintiff's failure to raise the issue of a conflict between the DOT and the jobs identified by the VE at the time of the hearing waived Plaintiff's right to raise such an issue at present. (Doc. 14 at 5.) Defendant contends further that Plaintiff's first argument is meritless, as "the regulations look to the job's skill level rather than the job's DOT language level . . . in assessing the impact of a claimant's inability to communicate in English." (*Id.* at 6 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(I)).) As to Plaintiff's third argument, Defendant counters that the ALJ's decision to discredit Dr. Hyman's opinion was supported by substantial evidence. (Doc. 14 at 13.)

//

//

**A.    Alleged Conflicts Between the VE's Testimony and the DOT's Job Requirements**

    **1.    Legal Standard**

At the Fifth Step of the sequential disability evaluation process, the ALJ must (1) assess the claimant's RFC, which is defined as the most that a claimant can do despite "physical and mental limitations" caused by her impairments and symptoms; and (2) consider potential occupations that the claimant may be able to perform given the claimant's RFC. *See* 20 C.F.R. §§ 416.945(a)(1), 416.966. The ALJ may rely on the DOT and testimony from the VE to assess the claimant's ability to perform certain jobs in light of her RFC. 20 C.F.R. §§ 416.966(e); 416.969; 416.966(d)(1); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). Generally, the occupational information provided by a VE should be consistent with the DOT. *See* SSR 00-04, 2000 WL 1898704, at *2 (Dec. 4, 2000). However, "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency. The ALJ must ask the expert to explain the conflict and 'then determine whether the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability determination." *Zavalin v. Colvin*, 778 F. 3d 842, 846 (9th Cir. 2015) (quoting *Massachi v. Astrue*, 486 F. 3d 1149, 1153-54 (9th Cir. 2007)). "Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-04, 2000 WL 1898704, at *2. The ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than on the DOT information. *Massachi*, 486 F. 3d at 1154.

Not all potential conflicts between a VE's testimony and the DOT will be apparent or obvious. *Gutierrez v. Colvin*, 844 F. 3d 804, 808 (9th Cir. 2016). To constitute a conflict, the difference between the VE's testimony and the DOT's listings must be obvious or apparent. *Id.* That is, the difference must concern DOT job requirements which are essential, integral, or expected. *Id.* Where the job itself is a familiar one, less scrutiny by the ALJ is required. *Id.*

While the ALJ must ask follow-up questions of the VE only when the VE's testimony is either obviously or apparently contrary to the DOT, the obligation does not extend to unlikely situations or circumstances. *Id.*

As a threshold matter, the Court finds that Plaintiff did not waive her right to raise the issue of the alleged conflict between the VE's testimony and the DOT's job requirements. *See Yang v. Berryhill*, No. 1:16-cv-1195 GSA, 2017 WL 5878203, at *3 (finding that a "plaintiff [who is represented by counsel] need not raise a conflict between the VE's testimony and the DOT regarding functional requirements of job duties . . . before the ALJ to preserve the issue"); *see also Shaibi v. Berryhill*, 870 F.3d 874, 882 (9th Cir. 2017). As such, the Court will consider whether, as alleged, the ALJ erred in failing to resolve such a conflict.

**2. The ALJ Failed to Resolve the Conflict Between Plaintiff's Language Limitations and the DOT's Language Requirements for the Jobs Identified by the VE.**

Plaintiff contends that the ALJ erred by failing to resolve the conflict between Plaintiff's inability to communicate in English and the DOT's language requirements for the three jobs identified by the VE. At the hearing, the ALJ asked the VE what jobs a person who is unable to communicate in English, among other limitations, could perform, and the VE testified that such a person could perform the jobs of patcher of electrical equipment, nut sorter, and weight tester. (AR 79-80.) The patcher of electrical equipment job requires level 1 language skills, which requires the following:

> *Reading*: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> *Writing*: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
>
> *Speaking*: Speak simple sentences, using normal word order, and present and past tenses.

DOT App'x C—Components of the Definition Trailer, General Education Development, 1991 WL 688702; *see also infra*, p. 13.

The job description of a patcher of electrical equipment is as follows:

> Covers wired electrical appliance components, such as thermostats used in heating pads, with insulating fabric: Tears piece of adhesive from dispenser roll, and places adhesive on workbench. Positions thermostat on fabric and arranges lead wires to prevent strain on soldered connections. Folds and seals fabric over thermostat, using fingers. May touch lead wires to test terminals and observe signal light to verify wiring continuity.

723.687-010, 1991 WL 679524.

The job description of a nut sorter, which also requires level 1 language skill, is as follows:

> Removes defective nuts and foreign matter from bulk nut meats: Observes nut meats on conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks. Places defective nuts and foreign matter into containers. May be designated according to kind of nut meat sorted as Almond Sorter (can. & preserv.); Peanut Sorter (can. & preserv.).

521.687-086, 1991 WL 674226.

The weight tester job requires level 3 language skills, which requires the following:

> *Reading*: Read a variety of novels, magazines, atlases, and encyclopedias. Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work.

> *Writing*: Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech.

> *Speaking*: Speak before an audience with poise, voice control, and confidence, using correct English and well-modulated voice.

DOT App'x C, 1991 WL 688702.

The job description of a weight tester is as follows:

> Tends machine that records variations in weight along sample strip of paper or other material: Inserts end of sample strip into testing machine to obtain reading on graph of basic weight of sample. Turns dial to bring weight indicator to center line on graph to calibrate machine for weight of material tested. Starts feed rolls that carry sample strip through machine to record variations in

12

weight of material on graph. Calculates percentage of variation in material weight, using formula or chart. Fills machine ink reservoir, using dropper.

539.485-010, 1991 WL 674890.

When reading the descriptions and the language level requirements together for these jobs, there is an apparent conflict between the VE's testimony that Plaintiff could perform as a patcher of electrical equipment, a nut sorter, and a weight tester, despite her inability to communicate in English, and the DOT's general requirement for these jobs of level 1 and level 3 language skills. *See*, *e.g.*, *Yang* 2017 WL 5878203, at *5 (finding an apparent conflict between ALJ's finding that claimant could not communicate in English and the level 1 language skills required for the jobs identified by the VE). The DOT clearly notes that some language skills are necessary to be successful for these jobs. *See Gutierrez*, 844 F. 3d at 808 (to constitute a conflict, the difference between the VE's testimony and the DOT's listings must concern DOT job requirements which are essential, integral, or expected). For instance, some language skills may be needed to understand how to "touch lead wires to test terminals" for the patcher of electrical equipment job, 1991 WL 679524, or to "us[e] formula[s] or chart[s]" to "[c]alculate percentage of variation in material weight" for the weight tester job, 1991 WL 674890.

Further, the conflict should have been apparent to the ALJ, given the contradictory approaches to language requirements by the DOT and by the Commissioner's five-step sequential process. That is, "[t]he DOT requires language skills for all jobs, while the Commissioner's five step process considers English skills, but the inability to speak or read English does not necessarily preclude an individual's ability to work." *Yang*, 2017 WL 5878203, at 5. Yet the ALJ did not ask the VE any follow-up questions to reconcile the apparent conflict. The ALJ failed to even ask the VE whether there was a conflict at all between her testimony and the DOT. *See Massachi*, 486 F.3d at 1152 (stating that an ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT); *see also* SSR 00–4p, 2000 WL 1898704, at *2. In fact, the ALJ asked the VE only one hypothetical question, and only in the context of its one hypothetical question did the ALJ present the VE with the fact that Plaintiff is "unable to communicate in English." (AR 79.) The Court

therefore cannot determine whether the ALJ properly relied on the VE's testimony.  *See* SSR 00-4p ("When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT.").

The fact that a conflict exists between Plaintiff's language limitations and the language skills required for the jobs identified does not, however, necessarily mean that Plaintiff is *per se* unable to perform the jobs (as the Commissioner contends would be the illogical result of such a finding).[4]  Rather, it means only that the ALJ was required to explore the conflict so that he could independently determine whether the explanation given by the VE was reasonable and provided a basis for relying on the VE's testimony rather than on the DOT requirements.

Accordingly, the Court cannot determine whether substantial evidence supports the ALJ's Step Five finding that Plaintiff could perform other work.  This error is not harmless since there are no other jobs in the DOT without language skill requirements.  The case must therefore be remanded so that the record can be developed in this area.  *See Garrison v. Colvin*, 759 F. 3d 995, 1020 (9th Cir. 2014).  On remand, the ALJ shall address the above discussed conflict with the VE.  After hearing additional testimony, the ALJ should determine whether the VE's explanation is reasonable and provides a basis for relying on the VE's testimony rather than on the DOT in accordance with SSR 00-04, 2000 WL 1898704 and the other cases outlined in this order.  If the VE's explanation is not reasonable, the ALJ may explore the availability of other jobs as appropriate.

---

[4] The Commissioners cites several cases to support the proposition that courts in this circuit have categorically found that non-English speakers can perform level 1 language jobs under the DOT.  (*See* Doc. 14 at 8-9.)  However, the cases cited are inapposite.  Unlike here, the ALJ in the cases cited properly elicited testimony from the VE to explain the apparent conflict between the claimant's inability to communicate in English and the language requirements outlined by the DOT for the identified jobs.  *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold that in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation . . .  Neither the ALJ nor the vocational expert addressed the impact of Pinto's illiteracy on her ability to find and perform a similar job.") (internal citation omitted); *Herrerra v. Colvin*, No. ED CV 13-1734-SP, 2014 WL 3572227, at *10 (C.D. Cal. Jul. 21, 2014) ("The ALJ met his obligation to investigate potential conflicts with the DOT, and his reliance on the VE's testimony was proper."); *Johnson v. Astrue*, No. C 12-01580 PJH, 2013 WL 3956248, at *10 (N.D. Cal. Jul. 30, 2013); *Landeros v. Astrue*, No. CV 11-7156-JPR, 2012 WL 2700384, at *5 (C.D. Cal. Jul. 6, 2012).

### 3. The ALJ Failed to Resolve the Conflict Between Plaintiff's Reasoning Limitations and the DOT's Reasoning Requirements for the Jobs Identified by the VE.

Plaintiff further contends that the ALJ failed to resolve the conflict between Plaintiff's ability to perform only simple repetitive tasks and the DOT's level 3 reasoning requirement for the identified job of weight tester. (Doc. 13 at 9.) In particular, although, as the ALJ found, Plaintiff's RFC limits her to performing "simple repetitive tasks" (AR 35), the VE testified that Plaintiff could work as a weight tester, which required level 3 reasoning (AR 80). Level 3 reasoning requires the following:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT App'x C, 1991 WL 688702.

The Ninth Circuit has categorically held "that there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning . . . [and found] the conflict to be plain." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). Further, the specific requirement of a weight tester that the person "calculate[] percentage of variation in material weight, using formula or chart" makes the conflict even more plainly apparent. 539.485-010, 1991 WL 674890.

The ALJ did not explore this apparent conflict with the VE. *See Massachi*, 486 F.3d at 1153; *see also* SSR-004p at *4. In fact, the ALJ failed to even include in his hypothetical question to the VE any mention of Plaintiff's limitation to simple, repetitive tasks. (*See* AR 79.) The Court cannot determine whether the ALJ properly relied on the VE's testimony that Plaintiff could perform the job of weight tester despite her limitation to simple, repetitive tasks.

Nor does the record contain persuasive evidence of Plaintiff's abilities that would support deviating from the DOT, and thus render the ALJ's error harmless. *Cf. Musser v. Colvin*, No. 1:14-cv-00684, 2015 WL 4460677, at *8-10 (E.D. Cal. Jul. 21, 2015) (finding harmless error where substantial evidence in the record supported deviating from the DOT, including Plaintiff's prior jobs, which required level 3 reasoning). Plaintiff's prior jobs as a nut and fruit packer, 920.687-

134, 1991 WL 687994, a bakery worker, 920.587-018, 1991 WL 688702, a fast-food worker, 311.472-010, 1991 WL 672682, and a laborer, stores, 922.687-058, 1991 WL 688132, required only level 2 reasoning. (*See* AR 79.) Level 2 reasoning requires the following:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

DOT App'x C, 1991 WL 688702. However, the jobs identified by the VE require level 3 reasoning, as defined above. The two levels of reasoning differ in two respects: (1) level 3 requires a person to carry out instructions in diagrammatic form, whereas level 2 does not; and (2) level 3 necessarily involves several variables in situations, whereas level 2 requires only a few variables. Absent any persuasive evidence in the record, the Court cannot conclude that these differences would not prevent Plaintiff—who suffers from depressive disorder and anxiety disorder—from performing a job requiring level 3 reasoning. *See*, *e.g.*, *Musser*, 2015 WL 4460677, at *8-10. The Court therefore cannot determine whether substantial evidence supports the ALJ's Step Five finding that Plaintiff could perform other work.

Accordingly, the case must be remanded so that the record can be developed in this area. *See Garrison v. Colvin*, 759 F. 3d 995, 1020 (9th Cir. 2014). On remand, the ALJ shall address the above discussed conflict with the VE. After hearing additional testimony, the ALJ should determine whether the VE's explanation is reasonable and provides a basis for relying on the VE's testimony rather than on the DOT in accordance with SSR 00-04, 2000 WL 1898704 and the other cases outlined in this order. If the VE's explanation is not reasonable, the ALJ may explore the availability of other jobs as appropriate.

**B.      The ALJ's Discrediting of Dr. Rita Hyman's Opinion**

The parties dispute whether the ALJ offered adequate reasons for affording only "little weight" to the opinion of Dr. Hyman, an examining physician. (*See* Doc. 13 at 9-15; Doc. 14 at 11-13.) The Court agrees with the Commissioner's position that the ALJ offered adequate reasons for discrediting Dr. Hyman's opinion.

//

### 1.    Legal Standard

The ALJ must consider and evaluate every medical opinion of record.  *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Madrigal v. Berryhill*, No. CV 16-8714-E, 2017 WL 3120257, at *3 (C.D. Cal. Jul. 21, 2017).    In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason."  *Madrigal*, 2017 WL 3120257, at *3 (quoting *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981)).  Nor can the ALJ make his or her own lay medical assessment.  *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (a hearing examiner not qualified as a medical expert should not make his or her own exploration and assessment of a claimant's medical condition) (citation omitted).

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physicians); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physicians).  *Fatheree v. Colvin*, No. 1:13-cv-01577-SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)).  The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual."  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

It is uncontested that Dr. Hyman examined Plaintiff—albeit in the context of a worker's compensation claim—and thus is considered an examining physician.  (*See, e.g.*, AR 34.)  "As in the case with the opinion of a treating physician, the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician."  *Lester*, 81 F.3d at 830 (citation omitted).  "And like the opinion of a treating doctor, the opinion of an

examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31 (citation omitted). Nonetheless, "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)).

### 2. The ALJ Properly Discredited the Opinion Evidence of Dr. Hyman.

The ALJ discredited Dr. Hyman's opinion on the ground, in part, that Dr. Hyman's findings as to Plaintiff's work limitations conflicted with Dr. Hyman's statements doubting the veracity of Plaintiff's complaints and the accuracy of the test results. (AR 38.) Such a reason, alone, constitutes a sufficiently specific and legitimate basis to discredit Dr. Hyman's opinion. *See*, *e.g.*, *Rusten v. Comm'r Soc. Sec. Admin.*, 468 Fed. App'x 717, 720 (9th Cir. 2012) (finding that ALJ had a legitimate and specific reason for discrediting doctor's opinion where doctor's own evaluation questioned claimant's self-reported symptoms); *Zettelmier v. Astrue*, 387 Fed. App'x 729, 731-32 (9th Cir. 2010) (finding sufficient basis for discrediting doctor's opinion where doctor's findings conflicted with his statements about the claimant's credibility); *Khounesavatdy v. Astrue*, 549 F.Supp.2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence or supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion."); *Munday v. Colvin*, No. SACV 13-870-OP, 2014 WL 2448924 (C.D. Cal. May 29, 2014) (finding that inconsistencies in doctor's opinion was a legally sufficient basis for rejecting doctor's opinion).

In particular, Dr. Hyman cautioned that her observations of Plaintiff and the psychological test results were "likely to over-represent the magnitude of [Plaintiff's] distress," because Plaintiff "has a tendency to overstate her level of disturbance," she has a "too-ready willingness to endorse a wide variety of complaints and discomforts," and her complaints may merely be a "cry for help" designed to "impress upon [Dr. Hyman] that she is feeling increasingly hopeless and desperate." (AR 944-45.) Yet, Dr. Hyman found that Plaintiff's mental impairments would prevent her from working in any type of work setting except for a

sheltered workshop setting, and she found that Plaintiff would be limited to working only a few hours a day, with a flexible work schedule, and in a stress-free setting. (AR 966.) These statements are contradictory. *See*, *e.g.*, *Kibble v. Comm'r Soc. Sec. Admin.*, 584 Fed.App'x 717, 719 (9th Cir. 2014) (finding a contradiction where physician opined that claimant's subjective complaints were out of proportion to the physical examination findings but that claimant could perform only light work).

Further, such a contradiction—one between the veracity of Plaintiff's subjective complaints and the accuracy of the psychological test results, on one hand, and Dr. Hyman's ultimate opinion about Plaintiff's ability to work based on those subjective complaints, on the other hand—strikes at the heart of Dr. Hyman's opinion, because Dr. Hyman's opinion was almost exclusively based on Plaintiff's subjective complaints and the results of the psychological testing. (*See* AR 967 (stating that her findings and opinions were "[b]ased on the findings from this evaluation, including the mental status observations, the psychological test results, the considerable volume of records reviewed, and Ms. Mora's self-reported history and complaints").)

Even to the extent that such inconsistencies would not, alone, provide a sufficient basis for discrediting Dr. Hyman's opinion, such inconsistences taken along with the ALJ's other stated bases—that Dr. Hyman evaluated Plaintiff only once, and that her opinion as to Plaintiff's work limitations reflect Plaintiff's subjective complaints—would provide sufficient reasons. *See*, *e.g.*, *Mogensen v. Berryhill*, No. CV 16-5291-PSG (AS), 2017 WL 4363009 (C.D. Cal. Sept. 26, 2017) ("[A]n opinion of disability premised to a large extent upon the claimant's own account of his symptoms and limitations may be disregarded [on this basis alone] once those complaints have been properly discounted."); *Edwards v. Comm'r Soc. Sec.*, No. 15-cv-02781-JCS, 2016 WL 4728808 (N.D. Cal. Sept. 12, 2016) (finding that ALJ provided sufficient basis for discrediting medical opinion where such opinion was based on a one-time evaluation and reliance on claimant's subjective complaints); *Zargi v. Comm'r Soc. Sec.*, No. CIV S-08-1677-CMK, 2009 WL 1505311 (E.D. Cal. May 27, 2009) (finding that ALJ provided sufficient basis for discrediting medical opinion where physician's treatment of claimant was sporadic and

the opinions were based on the claimant's subjective complaints).  Accordingly, the Court finds that the ALJ's stated bases for his determination of Dr. Hyman's credibility are supported by substantial evidence.

**C.     Remand is Appropriate**

Plaintiff contends that the ALJ's failure to resolve the above-discussed conflicts between the VE's testimony of the DOT should result in an award of benefits.  Usually, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  Courts are empowered to affirm, modify, or reverse a decision by the Commissioner "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g).  Courts generally exercise this power when it is clear from the record that a claimant is entitled to benefits.  *Garrison*, 759 F.3d at 1019.  "[W]here there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony.     Rather, we will . . . take that testimony to be established as true."  *Id.* (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988)).

The ALJ failed to resolve two apparent conflicts between the VE's testimony and the DOT: (1) the conflict between Plaintiff's inability to speak English and the language skills required for the identified jobs; and (2) the conflict between Plaintiff's mental impairments and the level 3 reasoning skills required for the job of weight tester.  *See supra* part V.A.2-3.  Remand for further proceedings to allow the ALJ to explore and resolve these conflicts is the appropriate remedy.  *Id.*  On remand, the ALJ shall explore these two conflicts between the DOT and the VE's testimony with the VE.  After hearing additional testimony from the VE, the ALJ should determine whether the VE's explanation is reasonable and provides a basis for relying on the VE's testimony rather than on the DOT in accordance with SSR 00-04, 2000 WL 1898704 and the other cases outlined in this order.  If the VE's explanation is not reasonable, the

ALJ may explore the availability of other jobs as appropriate.

## VI.     CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's Step Five finding that Plaintiff could perform other work is not supported by substantial evidence in the record and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **January 30, 2018**                    /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE